IiiSiiEsr, J.
Tile Police Jury of Pointe Coupée sues Ponce Colomb tó recover from him fourteen thousand two hundred and nineteen dollars and eighty cents, as a sum paid by them for building a levee on his plantation in the parish of Pointe Coupée, which contract was made and the work done, as they allege, according to law. They pray that the land be seized and sold to pay their claims with privilege.
The defendant, Colomb, answered by a general denial, and specially alleged that he was not bound by law to make the said levee; that it was made in 1859, when by law the said Police Jury was bound to make said levee at their own expense, and that' if they ha re paid for it, they have no recourse against him, nor the land on which it was made. The Citizens’ Bank intervened in the suit, claiming a mortgage and privilege on the land, sought to be affected to the parish, and adopting the defendant’s answer, and asked that the plaintiff’s demand be rejected.
The only question we deem it necessary to solve in this case is, whether' the defendant, Colomb, was bound to make the levee, or whether under the act of the Legislature of the 14th March, 1859, No. 82, which was to take effect from and after the first Monday in June, 1859, the Parish was not bound to make it at their own expense, to be refunded them by a tax on all the lands in the parish.
If this law is constitutional, which the plaintiff contends it is not, it repeals all laws and parts of laws in contravention therewith, and the defence set up by Colomb and the Bank must prevail. The act entitled “An Act in relation to lands and levees,” in the parish of Pointe Coupée, -was evidently intended to supercede all levee laws then extant in that parish; to establish therein a uniform, efficient and equitable system in regard to levees; and by means of a tax, general throughout the parish, to relieve the riparian owners from the onus of making and repairing levees, which they had been heretofore compelled to bear exclusively.
In the case of The State v. Harrison, 11 An. 723, to which the plaintiff has called our attention, the Court said, “It is contended that this act, (an act relative to slaves and free colored persons,) is in violation of the article 115 of the Constitution, which reads as follows: ‘Every law enacted by the Legislature shall embrace but one object, and that shall be expressed in the title.’” This article of our present Constitution is copied, word for word, from the Constitution of 1845. Chief Justice Eustis, who was a prominent member of the Convention which formed the Constitution of 1845, has given us (in the case of Walker v. Caldwell, 4 An. 297,) the following reasons for the article under consideration:
“The condition of our statute law was such at the time of the formation of the Constitution, as to impose on the Convention the necessity of providing in the Constitution itself for the’forms of legislation.
“The title of a law often afforded no clue to its contents; important general provisions were found placed in acts, private or local in their operation; provisions concerning matters of practice or judicial proceedings, were sometimes in the same statute, with matters entirely foreign to them.
“It was to prevent such anomalies that the Constitution requires the Legislature to confine each act to a single object, and to indicate distinctly that object in the title of the act,”
*198 We look in vain in tlie act now under consideration to discover any of the mischiefs which the constitutional provision was designed to guard against.
The great object of the act under consideration was to protect by sufficient levees, the lands in the parish bordering on the Mississippi river, and those in the rear of them, from inundation; and all the other provisions of the law, besides the main ones, were merely subsidiary thereto, such as the manner, by taxation upon all the, lands of the parish, indiscriminately, of providing the pecuniary means to do the necessary work; and also the prescribing of the administrative mode by which the levee system was to be carried out.
It would have been useless and supererogatory for theLegislature to pass as manj'separate acts as there were means devised to subserve the one great object in view, particularly in a case like this, in which the whole subject-matter of the law is so interwoven as to be almost inseparably blended.
No one could be misled by the title of the act as to what it related, and the perusal of the different sections of it, would show that the subject-matter of the act conforms to its title.
The design of a title to a statute is merely to indicate the general subject of it, and not to furnish a detailed exposition of its provisions. It, however, must embrace but one object, which must be expressed in the t.i Te.
The'objection to the law in the Harrison case was that it embraced two objects, entirely distinct aá persons, slaves and free colored persons; the difference between them being, as then held, the same, with some exceptions, as between a white man and a slave.
This can hardly be deemed a reproach to the title of the act in question, as the terms “lands” and “levees,” placed there in juxtaposition, form what mental philosophers style a “ complex idea;” at any rate, the terms are so homogeneal in the connection in which they are placed as to indicate plainly the purpose and end of the law, which was the protection of the lands of the parish from inundation by overflow of the river, or crevasses in its banks.
We fully recognize the doctrine universal in all American courts, that no legislative act should be declared void, unless its incompatibility with the paramount law be clear beyond a reasonable doubt; and we are not prepared to pronounce the law in question unconstitutional.
This view of the case dispenses us from examining any other point raised in the case, and it disposes of the intervention of the Citizens’ Bank, which simply for its protection, as claiming the first privilege and mortgage on the land, joined in the defence simply to defeat the plaintiff’s claim.
It is therefore ordered, adjudged, and decreed, that the judgment of the District Court be annulled, avoided and reversed; and it is further ordered,adjudged and decreed that judgment be and it is hereby rendered in favor of the defendant, Ponce Colomb, and also in favor of the intervenor, the Citizens’Bank, according to the prayer of its petition, and against the plaintiff, the Police Jury of Pointe Coupée, with costs in both courts,
Labauve, J., recused.